1

2

3

4

5

6

7

8                 **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  THE LINCOLN NATIONAL LIFE    )    CV 15-3771-RSWL-Ex
    INSURANCE COMPANY,           )
13                               )
                                 )    **ORDER re: Plaintiff's**
14              Plaintiff,       )    **Motion for Partial**
                                 )    **Summary Judgment or in**
15                               )    **the Alternative Summary**
                                 )    **Adjudication** [36]
16       v.                      )
                                 )
17  PAMELA MCCLENDON,            )
                                 )
18                               )
              Defendant.         )
19                               )
                                 )
20  _____  )

21       Currently before the Court is Plaintiff The Lincoln

22  National Life Insurance Company's ("Plaintiff") Motion

23  for Partial Summary Judgment, or in the Alternative,

24  Summary Adjudication ("Motion") as to its claim for

25  Money Had and Received against Defendant Pamela

26  McClendon ("Defendant") [36].  Having reviewed all

27  papers submitted pertaining to this Motion, the Court

28  **NOW FINDS AND RULES AS FOLLOWS:** The Court **GRANTS**

Plaintiff's Motion [36].

## I. BACKGROUND

### A.   Factual Background

Plaintiff is an Indiana corporation authorized to do business in California.  Compl. ¶ 1, ECF No. 1. Defendant is the daughter of Netha McClendon, the recipient of an annuity ("the Annuitant").  Id. at ¶ 5.

On August 13, 1992, Alexander Hamilton Life Insurance Company of America issued a Single Life Immediate Annuity, No. 4000073334 ("the Annuity") to the Annuitant.  Id.; Compl. Ex. 1, ECF No. 1-1.  In October 1995, Jefferson Pilot Life Insurance Company ("Jefferson") acquired the Annuity.  Id. at ¶ 6.  In April 2007, after merging with Jefferson, Plaintiff acquired ownership of the Annuity and its rights/obligations.  Id.  Starting September 20, 1992, the Annuitant would receive $3,000.00 monthly under the "Single Life Immediate Annuity – Life Only" option. Id. at ¶ 7; Compl. Ex. 1.  Pursuant to the Annuity, Plaintiff would make payments "as long as the Measuring Life [the Annuitant] is living."  See Compl. ¶¶ 8, 9, Ex. 1 at 8.  If the Annuitant died before all payments were made, "the remaining guaranteed payments will be paid, when due, to the Designated Beneficiary."  Id. The "Beneficiary" box on the Annuitant's contract states: "Not Applicable."  Compl. Ex. 1.

The Annuitant died on January 6, 1998.  Compl. ¶¶ 9, 10.  Defendant did not inform Plaintiff of the

Annuitant's death.  Id. at ¶ 13.  As a result,
Plaintiff made 190 monthly payments to Annuitant—who it
thought was still alive—from January 1998 to October
2013, totaling $570,000.  Id. at ¶¶ 10, 16.  The checks
were sent to the Annuitant's last-known address, where
Plaintiff alleges Defendant was living.  Id. at ¶ 11.
Plaintiff alleges that Defendant deposited the mistaken
overpayments into her bank account.  Id.  Sometime in
2006, the Annuitant purportedly signed a Deed of Trust
transferring her property to Defendant, even though the
Annuitant had been dead for eight years.  Decl. of
Douglas Burdick ("Burdick Decl.") ¶ 4, Ex. 2, ECF No.
36-2.  On March 6, 2009, a caller identifying herself
as the Annuitant allegedly called Plaintiff, provided a
birth date and social security number, and requested
reinstatement of payments.  Id. at ¶ 7, Ex. 5, ECF No.
36-2.

Plaintiff alleges that it was unaware of the
overpayments until October 2013.  Compl. ¶ 16.  On
December 18, 2013, Plaintiff sent letters to the
Annuitant's family, informing them of the overpayments
and requesting reimbursement.  Id. at ¶ 17.  On May 19,
2014, Defendant allegedly admitted responsibility for
the overpayments, but has yet to pay any of them back.
Id. at ¶¶ 18-19.

**B.  Procedural Background**

On May 19, 2015, Plaintiff filed its Complaint,
alleging the following claims: (1) Unjust Enrichment;

3

(2) Money Had and Received; (3) Money Paid; (4)
Conversion; (5) Imposition of a Constructive Trust.
Compl. ¶¶ 21-23; 28-29; 35; 40; 45.

On December 21, 2016, the final day of its motion
filing cut-off date, Plaintiff filed the instant Motion
as to the Claim for Money Had and Received and its
Separate Statement of Uncontroverted Facts and
Conclusions of Law ("SUF") [36-1].  Defendant's
Opposition was due on January 3, 2017.  Defendant
missed this deadline and filed an *ex parte* application
requesting an extension of time to file the Opposition
[40].  The Court granted the *ex parte* application,
allowing Defendant until 5 P.M. on January 6, 2017 to
file its Opposition [42].  On January 6, Defendant
filed its Opposition, Statement of Genuine Issues of
Material Fact, Objections to Plaintiff's Motion, and
Declarations [46, 47, 49].  Plaintiff's Reply was
timely filed on January 10, 2017 [51].

## II. FINDINGS OF FACT

1.  The Annuitant died on January 6, 1998.  Pl's Facts
    ¶ 5; <u>see</u> Decl. of Daniel S. Imber ("Imber Decl."),
    Ex. 7 at 10:4-5, ECF No. 36-3.

2.  The Annuity Contract provided for a monthly benefit
    payment of $3,000 under the Life Only option.
    Pl.'s Stmt. of Uncontroverted Facts ("Pl.'s Facts")
    ¶ 2, ECF No. 36-1; <u>see</u> Decl. of Douglas Burdick
    ("Burdick Decl.") ¶ 3, Ex. 1, ECF No. 36-2
    (undisputed).

4

3.   Between January 12, 2007 and October 14, 2013,
     Plaintiff issued 80 checks, $3,000 each, payable
     and addressed to the Annuitant, Netha McClendon.
     Pl.'s Facts ¶ 4; see Burdick Decl. ¶ 8, Ex. 6
     (undisputed).

## II. DISCUSSION

**A.   Legal Standard**

1.   Motion for Summary Judgment

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party moving for summary judgment has the initial burden of proof to show "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010). "A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by: citing to particular materials in the record, including . . . stipulations." Fed. R. Civ. P. 56(c)(1)(A). "In determining any motion for summary judgment . . ., the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in

5

opposition to the motion."   Local Rule 56-3.

Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.   In re Oracle Corp., 627 F.3d at 387.   If the moving party meets this burden, the burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. Id.; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000); see Fed. R. Civ. P. 56(a).

   2.   Partial Summary Judgment

Federal Rule of Civil Procedure 56(g) authorizes courts to grant partial summary judgment in order to limit the issues to be tried in a case.   State Farm Fire & Cas. Co. v. Geary, 699 F. Supp. 756, 759 (N.D. Cal. 1987) (citing Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981)).   Absent a specific statute authorizing otherwise, a partial summary judgment under Rule 56(g) is not a final judgment but rather an interlocutory summary adjudication or a pre-trial order, neither of which is appealable prior to the entry of a final judgment in the case.   Wynn v. Reconstruction Fin. Corp., 212 F.2d 953, 956 (9th Cir. 1954).

///

///

///

**B.   Analysis**

   1.   <u>Defendant's Evidentiary Objections</u>

      a.   *Objections to Plaintiff's Exhibits*

Defendant objects to the copy of the Annuity contract and Call Log Transcript and Log Notes—reflecting the March 2009 and May 2014 phone conversations—on the grounds of improper authentication, hearsay, and lack of foundation. Def.'s Objs. To Decl. & Exs. ("Def.'s Objs.") 2:8-13, ECF No. 49; Burdick Decl. Exs. 1-2; 4-5.

"A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment." <u>Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1551 (9th Cir. 1989).  As required by Rule 56, documentary materials need authentication through affidavits or declarations from individuals with personal knowledge of the document.  <u>Zoslaw v. MCA Distrib. Corp.</u>, 693 F.2d 870, 883 (9th Cir. 1982).

The aforementioned documentary evidence to which Defendant objects was properly authenticated in the Supplemental Declaration of Douglas Burdick, attached to Plaintiff's Reply.  Mr. Burdick is Plaintiff's Vice President and custodian of records with personal knowledge of these business records.  Supp. Decl. of Douglas F. Burdick ("Supp. Burdick Decl.") ¶ 1, ECF No. 51-1.  Mr. Burdick demonstrates personal knowledge of the declaration's contents as Plaintiff's Vice

President who personally reviewed and is "familiar with the files in this Action, the records of Plaintiff as they pertain to this matter, and Plaintiff's policies." Id.; Curley v. Wells Fargo & Co., 120 F. Supp. 3d 992, 998-99 (N.D. Cal. 2015) (Vice President of Loan Documentation who personally reviewed loan-related records at issue and affirmed that records were made in ordinary course of business established her familiarity with the records).

Moreover, although Defendant objects to the documentary evidence as inadmissible hearsay, the evidence fits within the business-records exception.[1] As set forth in the declaration, the records were made at or near the time of the recorded events and maintained in the ordinary course of Plaintiff's business by an individual with personal knowledge. Supp. Burdick Decl. ¶ 1. As such, the Court **OVERRULES** Defendant's objections on hearsay, lack of foundation, and lack of authentication grounds to the Annuity Contract, Transcript from Call Logs and log notes, and March 6, 2009 copy of the log notes prepared by

///

---

[1] Under this exception, a document is admissible if its proponent shows: (1) that the record was made at or near the time of the event; (2) that the record was made by or from information transmitted by a person with knowledge; (3) that the record was kept in the course of a regularly conducted activity of a business or organization; and (4) that it was a regular practice of that business or organization to make such a record. Fed. R. Evid. 803(6).

Plaintiff's customer service representatives [49].[2]

      b.   *Objections to Douglas Burdick Declaration*

Defendant objects to several paragraphs of the Burdick Declaration [36-2].  Defendant objects on largely redundant grounds: lack of personal knowledge, hearsay, relevance, conclusory/lacks foundation.  <u>See generally</u> Def.'s Objs.[3]

Because many of Defendant's objections are boilerplate and "devoid of any specific argument or analysis as to why any particular exhibit or assertion in a declaration should be excluded," <u>United States v. HVI Cat Canyon, Inc.</u>, ---F. Supp. 3d---, 2016 WL 7011348, at *5 (C.D. Cal. Sept. 30, 2016), the Court **OVERRULES** all of Defendant's objections as to paragraphs 3, 6, 7, and 10 of the Burdick Declaration [49].[4]  <u>See Amaretto Ranch Breedables v. Ozimals, Inc.</u>,

---

[2] Defendant also objects to the Deed of Trust, in which Defendant allegedly forged her mother's signature to transfer property to herself.  Burdick Decl. ¶ 4, Ex. 2.  This Deed of Trust allegedly contained the real property address to which Plaintiff mistakenly sent the Annuitant's overpayments.  Mot. 3:23-26.  Because the Court does not consider this piece of evidence in reaching its conclusions on this Motion, it **SUSTAINS** as **MOOT** this Objection.

[3] As to all paragraphs the Court considered in its Motion, Defendant objects on lack of personal knowledge grounds.  Fed R. Evid. 602.  Defendant objects to all paragraphs, except for paragraph 10, on hearsay grounds and conclusory/lacks foundation. Fed R. Evid. 801, 803.  Defendant attacks paragraphs 4, 6, and 7 on lack of authentication grounds.  Fed R. Evid. 901.

[4] Defendant objects to paragraph 4 of the Declaration where Mr. Burdick states that Plaintiff obtained a Deed of Trust, purportedly signed and notarized after the Annuitant's death,

907 F. Supp 2d 1080, 1081 (N.D. Cal. 2012) (summarily overruling boilerplate objections that parties failed to develop); Doe v. Starbucks, Inc., No. SACV 08-0582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)("[I]n motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised.")

Even if the evidentiary objections are pertinent, the Court is not satisfied that it should strike any of the contested paragraphs in the Burdick Declaration. Indeed, many of Defendant's rote objections can be handled in one fell swoop. Many of the statements Mr. Burdick makes are objected to as lacking personal knowledge and conclusory/lacks foundation. Pursuant to Federal Rule of Evidence 602, "[e]vidence to prove personal knowledge may consist of the witness's own testimony." As Plaintiff's Vice President and custodian of records, Burdick Decl. ¶¶ 1, 2, Mr. Burdick states that he has personal knowledge—and he plausibly does—of Plaintiff's business records, including the Annuity contract, call logs, call transcripts, and Plaintiff's general practice of

transferring property from the Annuitant to Defendant. Defendant objects on grounds of relevance, lack of personal knowledge, lack of authentication, hearsay, and conclusory/lacks foundation. The Court **SUSTAINS** these objections as **MOOT** because it does not rely on any of the specific portions of the Burdick Declaration to which Defendant objects.

learning of an annuitant's death after checks are returned or family members contact Plaintiff.

The hearsay objections can also be disposed of because many of the documents at issue are admissible under the business-records exception, party admissions, or admissions against interest.  Supp. Burdick Decl. ¶¶ 1, 2 ("[T]he records . . . were made at or about the time of the events recorded, and are maintained in the ordinary course of Lincoln's business.")  And the relevance objections to paragraphs 6, 7, and 10 are also improper, as the pieces of evidence objected to all have a tendency to prove or disprove material elements of the Money Had and Received claim, including whether Defendant received the money at issue.[5]

2.   _Plaintiff's Evidentiary Objections_

a.   _Objections to Pamela McClendon Declaration_

Plaintiff objects to the Declaration and Supplemental Declaration of Pamela McClendon [46-1, 50]

_____

[5] The Court also **OVERRULES** Defendant's blanket objections to paragraphs 6 and 7 on lack-of-authentication grounds.  The Court already concluded in _supra_ Part II.B.1.a. that the same exhibits in the Burdick Declaration were properly authenticated by the attached declaration from an individual with personal knowledge of their contents.  And if Defendant claims lack of authentication as to some other part of the paragraph, she fails to develop the objection in that respect.  Defendant also does not provide a thorough analysis for some of her other objections or explain their relevance to the Court's determination, including "speculative as to the intention of the caller" for the phone conversation transcripts and logs.  She also fails to explain how the phone conversations between Defendant and Plaintiff's customer service representatives were "inadmissible settlement negotiations."  Def.'s Objs. 3:12-14, 3:20-21.  The Court finds no reason to sustain those objections as well.

as they are unsigned and impermissibly contain her "e-
signature,"[6] and lack credibility.   Plaintiff also
generally objects to statements in the Declaration that
Defendant's sister and mother communicated to her as
inadmissible hearsay.   The Court **OVERRULES** each of
these objections.

Plaintiff objects to the McClendon Declaration as
lacking credibility and self-serving because it
contradicts statements made during Defendant's
deposition.   The sham affidavit rule prevents a party
from "creat[ing] an issue of fact by an affidavit
contradicting his prior deposition testimony." Van
Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir.
2009).   The Court must make a factual finding that (1)
the contradiction is a "sham;" and the (2)
"inconsistency between a party's deposition testimony
and subsequent [declaration] . . . is clear and
unambiguous." Id.   Plaintiff highlights inconsistences
between the declaration and Defendant's deposition
testimony.   For example, she states that she only
started depositing the Annuitant's checks in April 2012
after her sister died.   McClendon Decl. ¶ 7.   But in
her deposition, she testified that she deposited checks

---

[6] For declarations signed by individuals other than CM/ECF
Filers, Local Rule 5-4.3.4 requires a hand-signed signature.   It
appears that Defendant is not a registered CM/ECF filer.
Plaintiff asks the Court to strike the declaration because
Defendant has failed to properly sign it, but does not
sufficiently develop this objection to compel the Court to strike
the declaration in its entirety.

long before her sister's death.  McClendon Dep. 40:19-41:14, Dec. 6, 2016, ECF No. 36-3.  Plaintiff also contrasts Defendant's statement that she relied on what her mother and sister told her (rather than the Annuity contract) with her deposition testimony that she never spoke to her mother about the Annuity.  Compare McClendon Decl. ¶ 9, with McClendon Dep. 40:19-41:14.

These alleged inconsistencies are insufficient to render the declaration a sham.  The aforementioned contradictions are not necessarily a "sham" but may be more so a symptom of Defendant's own confusion as to the precise timeline of events or her attempt to clarify her prior testimony.  Messick v. Horizon Indus., Inc., 62 F.3d 1227, 1231 (9th Cir. 1995) ("[M]inor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.")  Similarly, the Court cannot say with certainty that the inconsistencies are clear and unambiguous.  In her declaration, Defendant states that she "relied upon what my mother and sister told me," but it is unclear whether this refers to conversations about the Annuity or other matters.  The Court cannot confidently say that this is clearly inconsistent with her deposition testimony that she never spoke to her *mother* regarding the Annuity.  And the deposition testimony makes no palpable contradiction as to conversations had with her sister.  Because the Court

should not make definitive credibility determinations
on a Motion for Summary Judgment, and the sham
affidavit rule is typically cautiously applied, the
Court **OVERRULES** Plaintiff's objections to the McClendon
Declaration. <u>Van Asdale</u>, 577 F.3d at 998.[7]

   b. *Objections to Chandler Parker Declaration*

 Plaintiff objects to the Declaration of Chandler
Parker [48] because the declarant "did not attach
identifying information for the discovery responses and
misstates the evidence." Reply 7:22-24. Discovery
documents produced during a Motion for Summary Judgment
require proper authentication through a declaration.
The Court **OVERRULES** this objection, as it sees no issue
with the copy of Plaintiff's internal policy and AWD
History Report, as they were produced during discovery
and Plaintiff apparently does not contest their
authenticity but instead vaguely complains that they
lack "identifying information." <u>Maljack Prods., Inc.
v. GoodTimes Home Video Corp.</u>, 81 F.3d 881, n.12 (9th
Cir. 1996) (documents on party's letterhead and
produced during discovery, attached to a declaration

---

  [7] The Court also **OVERRULES** Plaintiff's hearsay objection to
any statements in the McClendon Declaration made by the Annuitant
or Delores McClendon. Reply 7:19-21. Problematically, Plaintiff
does not point out specific statements it claims is hearsay. The
Court can only find that Defendant mentions she deposed
Plaintiff's checks "[p]ursuant to the directions of Delores,"
McClendon Decl. ¶ 7, and "relied upon what my mother and sister
told me." Supp. McClendon Decl. ¶ 9. These are not oral or
written assertions constituting a "statement" under the hearsay
definition, nor does Plaintiff show how they are "nonverbal
conduct . . . intended as an assertion." Fed R. Evid. 801(a).

1  were properly admitted.)[8]

2      3.  Whether the Claim is Barred by the Statute of

3          Limitations

4      Before deciding whether there is a genuine dispute

5  of material fact for the Money Had and Received claim,

6  the Court must contend with whether its applicable

7  statute of limitations has lapsed.

8      A claim for Money Had and Received is essentially

9  an action on an implied contract and thus is subject to

10 a two-year statute of limitations.  See Murphy v. Am.

11 Gen. Life Ins. Co., 74 F. Supp. 3d 1267, 1280 (C.D.

12 Cal. 2015); Cal. Code Civ. Proc. § 339(1) (two-year

13 limitations period applies to actions for contracts

14 "not founded upon an instrument of writing.") The

15 statute of limitations accrues upon plaintiff's

16 "discovery of the loss or damage."  Code Civ. Proc. §

17 339(1).

18

19 _____

       [8] The Court also **OVERRULES** the objection that the Parker
20 Declaration misstates the evidence.  Exhibit B contains
   Plaintiff's response as to when it received notice of Annuitant's
21 death.  Parker Decl. ¶ 3.  The interrogatory correspondingly
   states that Plaintiff received a report of the Annuitant's death
22 in January 2009.  Parker Decl. Ex. B at 2:19-20.

23      Plaintiff also objects to Defendant's "late-filed documents"
   and failure to comply with the Court's ex parte order extending
24 time for Defendant to file its Opposition until 5 P.M. on January
   6, 2017 [42].  Defendant did so, filing its opposition before the
25 deadline.  Defendant mostly complied with this Order.  The Court
   declines at this time to split hairs over the belatedness, later
26 on the evening of the 6th, during which Defendant filed various
   attachments to its Opposition, its Declarations, its Evidentiary
27 Objections, and its Statement of Genuine Disputes of Material
   Fact.  The Court **OVERRULES** this objection.
28

1    The parties dispute the precise date when the
2    statute of limitations began to run.[9]  The Complaint was
3    filed on May 19, 2015 [1].  Defendant argues that the
4    Action accrued in January 2009, when Plaintiff
5    discovered the Annuitant's death by using its
6    Repetitive Payment System Pension Benefit Inquiry
7    ("RPSPBI") system to cross-check her against the Social
8    Security Index.  Opp'n 6:21-23; Parker Decl. Ex. A, ECF
9    No. 48-2.  At the very least, Defendant argues, whether
10   Plaintiff had inquiry notice at this time is a question
11   of fact for the jury.  Id. at 7:1-2.  Plaintiff
12   counters that in March 2009, an individual—at the time,
13   Plaintiff assumed the Annuitant—called Plaintiff,
14   furnished the Annuitant's birth date and social
15   security number to indicate she was still alive, and
16   continued to endorse and deposit the reinstated Annuity
17   payments.  Reply 3:19-26; Burdick Decl. ¶ 7, Ex. 5.
18   These fraudulent activities tolled the statute of
19   limitations until at least October 2013, when Plaintiff
20   learned of the Annuitant's death.  Id. at 3:26-4:1.
21       Defendant offers evidence, in the form of
22   Plaintiff's interrogatory responses, that Plaintiff

23
24       [9] Both parties rely on the three-year statute of limitations
     in California Code of Civil Procedure § 338, reserved for actions
25   based on "fraud or mistake," including unjust enrichment and
     conversion.   The parties use this statute of limitations because
26   Defendant allegedly fraudulently endorsed checks on the
     Annuitant's behalf, inducing Plaintiff to mistakenly make
27   payments.   The appropriate statute of limitations for a Money Had
     & Received claim is two years, and the Court's analysis thus
28   flows from the section 339(1) statute of limitations.

typically runs RPSPBI reports to determine if an
annuitant has died and its admission that it received a
report in January 2009 indicating that Annuitant may
have died.  Parker Decl. Ex. B, ECF No. 48-2.
Defendant also proffers an AWD History report showing
Plaintiff's access to the Social Security Index that
would tell it that Annuitant had died.  Defendant uses
this evidence to make much of Plaintiff's January 2009
discovery of the Annuitant's death.  But Plaintiff
never disputes that it received a report in January
2009 of the Annuitant's death and properly ceased
Annuity payments.  Mot. 3:21.  The precise issue,
rather, is whether the statute of limitations was
tolled beginning in March 2009 when Defendant
purportedly called Plaintiff, pretending to be the
Annuitant.

The statute of limitations may be tolled under the
doctrine of fraudulent concealment.  "[W]hen the
defendant is guilty of fraudulent concealment of the
cause of action the statute [of limitations] is deemed
not to become operative until the aggrieved party
discovers the existence of the cause of action." Yumul
v. Smart Balance, Inc., 733 F. Supp. 2d 1117, 1130
(C.D. Cal. 2010) (internal quotation marks omitted)
(quoting Unruh-Haxton v. Regents of Univ. Of Cal., 162
Cal. App. 4th 343, 367 (Ct. App. 2008)).

Even if January 2009 is the logical starting point
and assuming that the Action was feasibly barred by the

two-year statute of limitations, Plaintiff has set
forth sufficient evidence that the statute of
limitations is tolled by the fraudulent concealment
doctrine.  Although the RPSPBI indicated Annuitant's
death, a call log from March 6, 2009 states that the
"Annuitant" called, "inquiring as to where her 2-20-09
check is."  Burdick Decl. Ex. 5 at 1.  Plaintiff's
representative verified the alleged Annuitant's social
security number and birth date, "believ[ing] it was
her."  Id.  A same-day call with a different
representative states that the Annuitant "is obviously
not deceased."  Id. at 2.  Again, the "Annuitant"
verified her social security number and date of birth.
Id.

      There is no genuine dispute of material fact as to
whether the statute of limitations is tolled by
Defendant's fraudulent concealment of the fact that she
wrongfully retained Annuity payments owed to her
deceased mother.  For fraudulent concealment to toll
the statute of limitations, something more than
nondisclosure is required.  Affirmatively deceptive
conduct will suffice.  Yumul, 733 F. Supp. 2d at 1131.
Defendant affirmatively misrepresented to Plaintiff
that the Annuitant was alive—even though she had been
deceased for eleven years—by requesting continued
Annuity payments and furnishing the Annuitant's
identifying information to continue said benefits.  The
affirmatively deceptive conduct continued in earnest

from 2009 to 2013.   Plaintiff believed the Annuitant
was still alive and continued to believe so, as
Defendant endorsed checks on behalf of her mother, the
intended Annuitant, by signing them "Netha McClendon,"
from April 12, 2009 to October 14, 2013.   Burdick Decl.
Ex. 6 at 26-80; Acme Paper Co. v. Goffstein, 125 Cal.
App. 2d 175, 180 (Ct. App. 1954) (fraudulent
concealment tolled statute of limitations in money had
and received claim where employee falsely represented
his role and fraudulently endorsed thirty-four
different checks).

    Fraudulent concealment tolls the statute of
limitations "until plaintiff discovers, or in the
exercise of reasonable diligence should have
discovered, the facts on which its cause of action is
based." Sears, Roebuck & Co. v. Blade, 139 Cal. App.
2d 580, 587 (Ct. App. 1956).   Only by May 29, 2014 did
Plaintiff actually discover that Defendant had been
depositing the mistaken payments, when she admitted to
Plaintiff's representative that she had received the
payments after her sister died, that they "went in
[Defendant's] account," and that she would need to pay
Plaintiff back.   Burdick Decl. Ex. 4 at 7.   And even
through reasonable diligence, it is unlikely that
following up with the Annuitant would have unveiled
Defendant's scheme, as she was allegedly convinced that
she was owed the Annuity payments and steadfastly
committed to providing the Annuitant's personal

information to receive more checks.  Moreover,
Plaintiff's policy in 2009, of accepting telephonic
verification of a birth date and social security number
as confirmation of an annuitant's identity—coupled with
Plaintiff's lack of a mechanism to investigate wrongful
receipt of annuity payments—suggests that it was
reasonable of Plaintiff not to automatically assume
that any caller verifying an annuitant's information
was a family member or shadowy figure wrongfully
receiving annuity payments.[10]  Indeed, the egregiousness
and outlandishness of Defendant's actions—regardless of
her claimed mistake of fact—underscores that Plaintiff
acted with reasonable diligence.  <u>Sears</u>, 139 Cal. App.
2d at 591 ("[W]hether [Plaintiff] acted as a reasonably
prudent [person] in not investigating [Defendant] must
be viewed in the factual setting in which it was
made.")

In sum, Defendant does not counter Plaintiff's
adequate evidence that supports tolling the statute of

[10] Defendant argues that Plaintiff's internal policies
dictate that it receive a written guarantee of the Annuitant's
death.  Defendant proffers an internal policy, which states that
"[i]f the [RPSPBI] report shows a client is deceased but in fact
they are alive, we require a letter of instruction with signature
guarantee stating that they are alive."  Parker Decl. Ex. 3 at 2,
ECF No. 48-3.  This argument is misplaced, and does not disturb
the conclusion that summary judgment is appropriate as to the
statute of limitations issue.  The policy Defendant presents was
effective on August 24, 2011, well after Plaintiff accepted
Annuitant's birth date and social security information during the
March 2009 phone call.  This anachronistic piece of evidence does
little to undermine Defendant's scheme of fraudulent concealment
that tolls the Money Had and Received claim.

limitations until at least October 2013.  The only
scintilla of evidence that Defendant offers otherwise
is that Plaintiff knew of the Annuitant's death as
early as January 2009.  Once again, Plaintiff does not
contest this and it would have permanently ceased
payments but for Defendant's fraudulent concealment.
Thus, there is no genuine dispute as to whether the
statute of limitations merited tolling until October
2013.  The Complaint was appropriately filed in May
2015.

    4.  Money Had and Received

    The Court now turns to whether there is a genuine
dispute of material fact as to whether Plaintiff has
proven its Money Had and Received Claim.

    A claim for Money Had and Received makes a
defendant indebted to a plaintiff "for money had and
received by the defendant for the use of the
plaintiff."  Kandel v. Brother Int'l Corp., No. CV
08-1040 DSF (RCx), 2009 WL 9100406, at *1 (C.D. Cal.
Feb. 13, 2009) (citation omitted).  Although the claim
is one at law, it arises in equity when "one person has
received money which belongs to another and which in
equity and good conscience . . . should be returned."
Hendrickson v. Octagon, Inc., Nos. 14-cv-01416 CRB,
2016 WL 7033781, at *13 (N.D. Cal. Dec. 2, 2016)
(internal quotation marks omitted) (quoting Mains v.
City. Title Ins. Co., 34 Cal. 2d 580, 586 (1949)).  The
elements are as follows: (1) defendant received money;

21

(2) the money defendant received was for plaintiff's
use; and (3) defendant is indebted to plaintiff.
Fireman's Fund Ins. Co. v. Commerce & Indus. Co., No.
C-98-1060VRW, 2000 WL 1721080, at *8 (N.D. Cal. Nov. 7,
2000).

> a.   *Whether Defendant Received Money*

The Court gleans no genuine issue of material fact
as to the evidence regarding this element.  Plaintiff
presents 80 checks, totaling $240,000, endorsed by
"Netha McClendon," the Annuitant, from January 2007 to
October 2013, long after her death in January 1998.
Burdick Decl. Ex. 6.  Defendant herself admits that she
deposited checks from Plaintiff into the joint bank
account she had with her deceased mother, McClendon
Decl. ¶ 7, and endorsed each check in her mother's (the
Annuitant) name.  Id.  Defendant's December 2016
deposition also leaves little doubt that she received
and endorsed at least 80 checks from January 2007 to
October 2013.  McClendon Dep. 82:15-24, 83:24-84:2.

> b.   *Whether the Money Received was for
> Plaintiff's Use*

Defendant argues that because Plaintiff intended to
pay the Annuitant, Netha McClendon, Plaintiff cannot be
the intended beneficiary.  Opp'n 7:11-14.  Plaintiff
counters that the Annuity payments were made for its
own benefit because it was fulfilling its contractual
obligations to pay the Annuitant under the contract.
Reply 4:15-16.

In _Fireman's Fund_, the insurer defendant received $27,264,500 in a subrogation claim against a third-party insurer.  2000 WL 1721080, at *1.  Plaintiffs raised a claim for Money Had and Received, claiming entitlement to this amount because they paid $5 million to the insured and thus gained an assignment of the insured's rights.  Id. at *7.  Plaintiffs could not, however, show that any of the amount defendant received from a third-party insurer was for plaintiffs' use. The court stated: "defendant pursued subrogation against [the third-party insurers] by itself; plaintiffs elected not to join in the action . . . [p]laintiffs may have had a separate subrogation claim against those third-party insurers based on its $5 million payment to the insured. But plaintiffs cannot establish that any portion of the money received by defendant was for plaintiffs' use." Id. at *8. Nevertheless, the court noted circumstances under which a plaintiff could show the money was intended for its own use; for instance, if defendant received money as a result of its scam and "induced [the money] under the guise that it would be used for plaintiffs." Id. (citation omitted).  The key, the court explained, was that defendant "received money _for the use of the plaintiff_." Id. (emphasis in original).

Plaintiff has demonstrated there is no triable issue of fact whether the Annuity payments were intended for its use.  The facts here slot neatly into

the example provided in <u>Fireman's Fund</u>: Defendant
received the Annuity overpayments from her scam of
endorsing her mother's signature on the checks.  She
induced the payments under the guise that the money was
for Plaintiff's use in the sense that Plaintiff would
send the money to fulfill its obligations to pay the
Annuitant under the contract.

Defendant insists that the money was only for the
Annuitant—not the insurance company Plaintiff's—use.
This blinkered approach to the definition of a
beneficiary ignores the realities of litigating a Money
Had and Received claim.  Per Defendant, in the instance
of an annuity or insurance contract, only the payee is
the intended beneficiary.  Under Defendant's logic,
only the payee can stake out a claim for Money Had and
Received; any time a company with an Annuity contract
raises a claim, it is defeated.

It is not uncommon that an insurance company, bank,
or other third-party will raise a Money Had and
Received claim even though the insured or payee was the
one who literally received the benefit of the money at
issue.  The Fifth Circuit rejected this type of
argument—that a plaintiff insurance company lacked
"standing" because a financial recovery on the Money
Had and Received claim would only benefit its insured
after the insured's employee had "pilfered and filched
checks through the financial filter of forged
endorsements."  <u>Peerless Ins. Co. v. Tex. Commerce</u>

1  Bank-New Braunfels, N.A., 791 F.2d 1177, 1178 (5th Cir.
2  1986).  The Fifth Circuit summarily disposed of this
3  argument:

4         Whether styled as a "standing" argument or more
5         properly as an assertion that Peerless is not a
6         real party in interest, Texas Commerce's claim
7         is frivolous. Peerless has a real pecuniary
8         interest in this case. Any recovery from Texas
9         Commerce reduces Peerless' obligation to North
10        American and brings Peerless closer to the point
11        where it can begin, through proceedings against
12        other parties, to recover the money it paid to
13        North American . . . [w]e refuse to accept such
14        a result.

15  Id. at 1181.

16        Here too, allowing Plaintiff to recover from
17  Defendant would reduce its obligation to the
18  Annuitant—or in this case, her estate—and uphold its
19  contractual obligations to pay the Annuitant (the plans
20  do not designate a beneficiary to whom Plaintiff could
21  otherwise pay).  Granting summary judgment as to the
22  Money Had and Received claim allows Plaintiff to start
23  recovering the $500,000 it mistakenly paid due to
24  Defendant's avarice.  Denying summary judgment based on
25  Defendant's specious and fallacious argument that only
26  the Annuitant—and not the insurance company who paid
27  her hundreds of thousands of dollars pursuant to an
28  Annuity contract—stands to benefit from the payments

1  would lead to an incorrect result.

2         c.   *Whether Defendant is Indebted to Plaintiff*

3     The third element effectively measures whether

4  Defendant has returned the ill-gotten money to

5  Plaintiff.  No dispute of material fact as to this

6  element exists; Defendant has yet to reimburse

7  Defendant for nearly $240,000 in wrongful proceeds.

8  Defendant did not return the payments, as evidenced by

9  letters from December 18, 2013, January 21, 2014, and

10  April 29, 2014 requesting that Defendant remit Annuity

11  overpayments from January 20, 1998 to October 20, 2013.

12  Burdick Decl. Ex. 3.  In each subsequent letter,

13  Plaintiff noted that it had not received any response

14  or payment.  Id.  Defendant also acknowledged her

15  indebtedness to Plaintiff during the May 29, 2014 phone

16  conversation, stating that she would have to "make the

17  payments back" and requesting the contact information

18  of the Annuities Department to which she should send

19  the reimbursement.  Burdick Decl. Ex. 4 at 6, 11-12.

20         d.   *Whether Defendant was an Innocent*

21              *Beneficiary that Reasonably Relied to Her*

22              *Detriment*

23     Defendant argues that granting summary judgment on

24  the Money Had and Received claim is inappropriate even

25  if there are no genuine disputes regarding the

26  elements, as she has a viable defense.  Defendant

27  argues that she is an innocent beneficiary who did not

28  know of Plaintiff's mistaken payments and detrimentally

relied on the payments while spending the money on the
"necessities of life."  Opp'n 4:12-13, 5:6-7.

     In Bank of America v. Sanati, the court briefly
touched upon the "detrimental reliance by an innocent
beneficiary" theory that Defendant espouses.  In that
case, Mr. Sanati's Bank of America erroneously
transferred an unintended principal portion ($203,750)
of his bank account and accrued interest to the joint
account he held with his wife.  11 Cal. App. 4th 1079,
1082 (Ct. App. 1992).  The Court recognized that
detrimental reliance by an innocent beneficiary was a
"widely acknowledged" defense to restitution.  Id. at
1084.  While the court permitted the bank to receive
restitution from the unintended beneficiaries and
granted the motion for summary judgment based on a
different defense, Defendant's case is distinguishable
from Sanati even from a cursory glance at the facts.
In Sanati, the court considered whether the "discharge
for value" rule impeded Bank of America from recovering
the erroneously-transferred funds.  But unlike here,
the Sanati defendants were always intended recipients
of the funds; indeed, Mr. Sanati arranged for Bank of
America in London to send monthly accruing interest
from his separate account to his joint account with Ms.
Sanati.  By contrast, Defendant was never the intended
recipient of the Annuity payments here—the Annuity
contract very clearly states that the Annuitant had no
designated beneficiary to receive remaining payments

after the Annuitant's death.  Compl. Ex. 1.

Defendant's defense makes little sense then; if she is not even a designated beneficiary for the Annuity, it defies logic for her to argue that she is an innocent beneficiary.  This emphasis on the actual, intended beneficiary in a Money Had and Received claim took shape in Lowery, where the court granted summary judgment for a Money Had and Received claim as to an attorney defendant because the plaintiff had only paid money to the attorney's client, a motion-picture distribution company.  Like the attorney defendant in Lowery—ancillary to the proper flow of payments between plaintiff and the distribution company—Defendant is not even a proper player in a Money Had and Received claim, let alone an innocent beneficiary.  Even if she were, her argument that she is "innocent" is weakened by the fact that she improperly endorsed the Annuitant's signature on countless checks.

In contrast to Defendant's insistence that she did not know the payments were not meant for her, the Annuity contract terms clearly state that Defendant never should have received Annuity payments, let alone after the Annuitant had died.  First, the Annuity Contract from August 13, 1992 very clearly states, "[w]e will make annuity payments as specified on the Policy Schedule as long as the Measuring Life [Netha McClendon] is living. If the Measuring Life dies before all guaranteed payments have been made, the remaining

guaranteed payments will be paid, when due, to the
Designated Beneficiary." Burdick Decl. Ex. 1 at 3.
Defendant was not a Designated Beneficiary, let alone
mentioned anywhere in the Annuity contract. Indeed,
the space to designate a beneficiary reads "Not
Applicable," and states that "This section does not
apply if Life Only Option is chosen." Id. at 1. The
annuitant had the "Single Life Immediate Annuity"
option. Id. Defendant wanly protests that she was
unaware of the contractual terms and continued to
endorse checks thinking she was the beneficiary, per
her mother and her sister's orders. Burdick Decl. Ex.
4 at 7, 9; McClendon Decl. ¶ 7. This is not enough to
generate a triable issue of material fact.
Defendant's, her mother's, and her sister's ignorance
of the Annuity terms—whether willful, imprudent, or
otherwise—have no place in the legal argument for Money
Had and Received and do not create a triable issue of
material fact as to this claim.

Contrary to Defendant's "innocent beneficiary"
theory, the evidence indicates that Plaintiff
mistakenly paid Defendant. "A plaintiff may bring a
claim for money had and received if the plaintiff has
paid money under the mistaken belief that he was under
a duty to do so." Lowery v. Blue Steel Releasing,
Inc., No. CV 02-0003-DSF(CTx), 2004 WL 6215611, at *7
(E.D. Cal. Nov. 1, 2005) (citation omitted). A
plaintiff is entitled to restitution for mistaken

payment if defendant induced the mistake through fraud. <u>Id.</u> Plaintiff sent mistaken overpayments it thought it owed to the Annuitant, operating under the assumption that she was still alive.  These mistaken payments were induced through Defendant's fraud of calling Plaintiff, pretending to be her mother through corroborating information, and requesting continued payments.

The only shred of contrary evidence Defendant offers is her self-serving statements that she continued to deposit payments because her mother told her that she wanted Defendant and her now-deceased sister, Delores McClendon, to share the Annuity proceeds after her death.  Opp'n 5:4-5.  This mistaken belief was also apparently perpetuated by Defendant's now-deceased sister.  Defendant unconvincingly protests that she was unaware that the Annuity was only for her mother's benefit.[11]  Apparently, Defendant believed that the monthly payments would continue after Annuitant's death until all sums had been paid out.  Opp'n 5:1-3, 4:27-5:1.  This argument is unconvincing and has no place in the elements and law for Money Had and Received.

At bottom, Defendant fashions a theory that mistake of fact or a defendant's willful blindness to an Annuity contract's terms can dismantle a Money Had and Received claim.  Defendant provides no case law to

---

[11] However, both are deceased and unable to provide declarations or exhibits to shore up Defendant's arguments.

support this novel theory, nor does she provide a
scintilla of evidence to doubt that the Annuity was
only intended for the Annuitant, regardless of a
mother's well-meaning wishes for her daughters to
posthumously share in her Annuity.  Accordingly, the
"innocent beneficiary" defense is unavailing, and there
is no triable issue of material fact as to any of the
elements required for a Money Had and Received claim.

**III. CONCLUSION**

Based on the foregoing, the Court **GRANTS**
Plaintiff's Motion for Partial Summary Judgment [36]
as to the Money Had and Received claim.

**IT IS SO ORDERED.**

DATED: January 26, 2017          RONALD S.W. LEW
_____

                                 **HONORABLE RONALD S.W. LEW**
                                 Senior U.S. District Judge